**Bryan TOURDOT, Plaintiff,**

v.

**ROCKFORD HEALTH PLANS, INC., Defendant.**

No. 04–C–0404–C.

United States District Court, W.D. Wisconsin.

Feb. 15, 2005.

Steven T. Caya, for Plaintiff.

Stephen E. Balogh, Williams & McCarthy, Rockford, IL, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action brought pursuant to 29 U.S.C. § 1132(e) of the Employee Retirement Income Security Act and 28 U.S.C. § 1331. Plaintiff Bryan Tourdot is suing for benefits he believes are due him under the terms of his employer's group health plan. Defendant denies that it owes plaintiff any benefits, arguing that plaintiff was injured as a result of an illegal act (driving while intoxicated) and the plan provides no coverage for services provided as a result of an illegal act. The case is before the court on cross-motions for summary judgment filed by the parties.

Plaintiff began this action in a Wisconsin state court; defendant removed the case to this court. It is not entirely clear whether plaintiff is suing the correct defendant or whether venue is proper in this district. Section 1132(e)(2) of ERISA provides that actions may be brought "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." The parties

**1102**

have not explained whether defendant is the administrator of the employer's group health plan; presumably it is and therefore is a proper defendant under § 1132(e). Assuming that it is, however, defendant should have removed this case to the Northern District of Illinois, the district in which the plan is administered (because it is the district in which defendant has its place of business) and also the district in which the alleged breach (refusal to pay benefits under the plan) would have occurred. Despite these questions, I see no reason not to exercise jurisdiction over the dispute. Subject matter jurisdiction is present under § 1132(e)(1); defendant has not denied that it is subject to suit and potentially liable for any remedy plaintiff may be due; and improper venue may be waived, as it has been in this case by plaintiff's failure to raise the subject.

For the purpose of deciding this case, I find that the following facts are undisputed and material.

## UNDISPUTED FACTS

Plaintiff Bryan Tourdot is an insured of defendant Rockford Health Plans, Inc. At all relevant times, defendant was an insurance company licensed to issue group health policies to employers, with its principal place of business in Rockford, Illinois. It issued a group health policy to plaintiff's employer.

On July 16, 2003, while plaintiff was covered by his employer's group health policy, he was involved in an accident involving his motorcycle and an automobile. The accident occurred in Janesville, Wisconsin, when plaintiff was momentarily distracted by the activities of dancers at Screamin' Meemies, failed to stop with traffic and ran his motorcycle into the automobile stopped in front of him. He sustained personal injuries requiring medical treatment. During the two-hour period immediately preceding the accident,

plaintiff had consumed more than two alcoholic beverages and in the four hours preceding the accident, may have consumed as many as four to five beers.

Plaintiff was issued a traffic citation for inattentive driving, which he resolved later with a plea of no contest. He was given a breathalyzer test, which resulted in a blood alcohol level of .10gm/dL. However, when his blood alcohol level was tested in the emergency room after the accident it was found to be .14 gm/dL.

On July 18, 2003, defendant wrote plaintiff, denying coverage for the cost of the medical services plaintiff's injuries required. Defendant cited Article XI, # 40 that excluded coverage for "treatment, services and supplies in connection with any illness or injury caused by a Member's operation of a motorized vehicle when legally prohibited and/or intentional use of illegal drugs." At some point, defendant realized that the plan in effect at the time of the accident did not contain this exclusion and advised plaintiff that it was relying instead on an exclusion in the policy covering plaintiff that applies to "services which result from war or act of war, whether declared or undeclared, or from participation in an insurrection or riot, or in the commission of an assault, felony, terrorist action, or any illegal act."

As of July 16, 2003, Wis. Stat. § 340.01(46m)(a) set the prohibited blood alcohol concentration at .10 or greater for drivers with 2 or fewer prior convictions, suspensions, or revocations. (The legislature reduced the level to .08, effective September 30, 2003.)

## OPINION

■ Neither party has identified any provision of the plan documents that grants defendant discretion to determine how various provisions of the plan should be interpreted. Without any indication

that the plan's administrator has insulated its decisions from close judicial scrutiny, I must exercise *de novo* review over its decision to deny plaintiff's claim for benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (whether exercise of power to construe disputed or doubtful terms is permissive or mandatory depends on trust terms).

Defendant's denial of plaintiff's claim rested on its determination that plaintiff's operation of his motorcycle while legally drunk was an illegal act. Defendant contends that its term is straightforward and that it covers the act of driving with a blood alcohol level in excess of .10 because the Wisconsin legislature has declared such driving illegal in Wis. Stat. § 346.63, which provides that "(1) No person may drive or operate a motor vehicle while: ... (b) The person has a prohibited alcohol concentration."

Plaintiff argues that the term "illegal act" is ambiguous for a number of reasons. First, the principles of *ejusem generis* apply, so that the general term, "illegal act," must be understood in reference to the specific terms enumerated in the exclusion provision. Under this canon of construction, a reasonable reader would not read "illegal act" as including a minor traffic violation such as the inattentive driving for which he was ticketed, when the preceding acts are such serious matters as insurrection, commission of a felony or a terrorist act. Moreover, such a reading would apply to other acts punishable by no more than a civil forfeiture, such as driving over the speed limit or not wearing a seat belt. Second, the exclusion is ambiguous because it does not say whether an illegal act requires a conviction and third, it is ambiguous because it does not prescribe whether a causal connection is required between the illegal act and the accident. Finally, plaintiff argues that defendant must have

realized that the exclusion on which it is relying is ambiguous because it amended the plan to incorporate a specific exclusion for coverage of injuries caused by the operation of a motorized vehicle when legally prohibited.

None of plaintiff's challenges to defendant's plan is persuasive. The Court of Appeals for the Seventh Circuit decided in 1990 that a similar provision in a health plan barred an injured plaintiff or his assignee from recovering medical expenses incurred for services for injuries while engaging in any illegal or criminal enterprise or activity. In *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust,* 901 F.2d 1369 (7th Cir.1990), the court rejected a number of similar challenges by the plaintiff. It found that that driving with more than the legal limit of blood alcohol was an illegal activity within the meaning of the policy at issue, noting that the state of Illinois made drunk driving a misdemeanor punishable by a year's imprisonment and that it was reasonable for the defendant benefit plan to interpret the words of the exclusion, "while engaged in," as "resulting from." It seemed to hold open the possibility that in some cases a jury trial would be necessary to determine whether the injuries for which benefits were claimed were the result of the impaired driving but it concluded that no such trial was necessary in the case before it because the only argument was that loose gravel on the side of the road might have caused the driver to lose control of his car. Such a supposition was "not only unsupported but also irrelevant, because it does not meet the inference that [the driver's] inebriation led him to drive on the shoulder, where gravel and worse hazards await." *Id.* at 1371.

Plaintiff argues that *Sisters of the Third Order* is distinguishable in several ways. First, the provision in that case was more

straightforward. It excluded coverage for expenses incurred while engaged in any illegal or criminal enterprise or activity. It did not refer to acts of war or insurrection and thus, did not imply ambiguity as the term in this case does because of its inclusion in a set of far more serious acts. Plaintiff is stretching the principle of *ejusdem generis* beyond its bounds. He fails to recognize that "illegal acts" is not such a general term as to require reference to the allegedly more specific terms that precede it. Illegal acts is a simple concept, referring to acts that the legislature has prohibited by law. There is no need to resort to the principle of *ejusdem generis* to understand its meaning. *Garcia v. United States,* 469 U.S. 70, 74, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (" 'the rule of *ejusdem generis,* while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty' ") (quoting *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 588, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) (quoting in turn *United States v. Powell,* 423 U.S. 87, 91, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975))).

The more interesting question is whether Wisconsin's treatment of a first offense drunk driving conviction as a civil forfeiture "decriminalizes" plaintiff's act, so that it is no longer covered by the term, illegal act. Neither party argues the point, perhaps conceding the persuasiveness of Judge Reynolds's decision in *Lampen v. Albert Trostel & Sons Employee Welfare Plan,* 832 F.Supp. 1287, 1292 (E.D.Wis. 1993). *Lampen* concerned a health benefit plan that excluded coverage for bodily injuries "resulting directly or indirectly from insurrection, war, service in the armed forces of any country or participation in a riot or during the commission of an act of crime." *Id.* at 1288. The plaintiff argued that the exclusion did not apply to him because he was never convicted of drunk driving or even charged with it and moreover, would not have been charged with a crime in any event because it would have been his first conviction and therefore would have been punishable by forfeiture. Judge Reynolds rejected this argument, relying in large part on what he characterized as the *Sisters of Third Order*'s unambiguous determination that drunken driving is a crime. He held that the terms of the plan do not require a conviction and that Wisconsin's decision to treat a first conviction as a civil forfeiture does not change the criminal nature of the act but merely the penalty structure. *Id.* at 1292 (citing *State v. McAllister,* 107 Wis.2d 532, 535, 319 N.W.2d 865 (1982) ("graduated penalty structure is nothing more than a penalty enhancer ... which does not in any way alter the nature of the substantive offense")). For purposes of deciding plaintiff's claim for benefits and determining whether the services provided to him were excluded from coverage under the plan, defendant needed to know only that driving with a prohibited blood alcohol level is a criminal act in Wisconsin.

Plaintiff argues that if drunk driving is considered a criminal act, insurers could deny coverage for other acts that are treated as civil forfeitures. The answer to this is that they cannot (assuming that they do not make such an exclusion explicit in their plans). Matters that are classified as civil forfeitures are not crimes under Wisconsin law. Drunk driving *is* classified as a crime but one for which the penalty for a first offense is treated as a civil forfeiture.

Plaintiff argues that the exclusion is ambiguous because it does not say whether an illegal act requires a conviction, but this argument cannot succeed. Illegal acts are illegal acts, whether or not they result in convictions. As Judge Reynolds explained in *Lampen,* 832 F.Supp. at 1292, there may be many reasons why a criminal act does not result in a conviction. The criti-

cal question is whether the act is one that is classified as criminal, not whether it is one that was charged and resolved with a conviction.

The exclusion is not ambiguous for lack of a requirement of a causal connection between the illegal act and the accident. The need for a causal connection is clear in the exclusion, which applies to services "which *result from*" any illegal act. "Result from" implies a connection; indeed, it requires one. However, it does not follow that because plaintiff was ticketed for inattentive driving, rather than drunk driving, defendant erred in denying him coverage. Plaintiff has offered no admissible evidence to suggest that his accident did not result from his inebriated state. I can imagine no way in which he could persuade a reasonable jury that his blood alcohol level was not *a* cause of his accident.

▉▉▉▉ Plaintiff's final argument rests on the subsequent amendment of the plan to clarify the exclusion's application to driving with a prohibited blood alcohol level. The general rule of contract construction is that a contract purports to be a complete expression of the entire agreement between the parties and that parol evidence is admissible only to show that what appears to be a straightforward term might be ambiguous because of customs in the industry or to explain an ambiguous term. *E.g., Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 879–80 (7th Cir.2005) (Illinois law); *Deckard v. General Motors Corp.*, 307 F.3d 556, 565 (7th Cir.2002) (Indiana law); *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 839 (7th Cir.2002) (Iowa law); *Bristol–Myers Squibb Co. v. Ikon Office Solutions, Inc.*, 295 F.3d 680, 684 (7th Cir.2002) (Missouri law). The subsequent amendment on which plaintiff relies might be relevant if he had shown that the term "illegal acts" is ambiguous. Without that preliminary showing, he cannot use the fact of the amendment for the purpose of interpreting the contract.

I conclude that plaintiff has failed to show that defendant breached the terms of plaintiff's employer's health benefit plan when it denied him coverage under the plan.

## ORDER

IT IS ORDERED that plaintiff Bryan D. Tourdot's motion for summary judgment is DENIED; defendant Rockford Health Plans, Inc.'s motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.